UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X
NANCY RUHLING,

                      Plaintiff,

              -against-

NEWSDAY, INC.,

                      Defendant.
---------------------------------------------------------X

**ORDER**
CV 04-2430 (ARL)

**LINDSAY, Magistrate Judge:**

After a twelve-day trial, a jury returned a verdict in favor of the plaintiff on her disability discrimination claim under the New York State Human Rights Law (the "NYSHRL"), N.Y. Executive Law § 296 and awarded $100,000 for emotional distress damages. Defendant, Newsday, Inc., now moves for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(b), or in the alternative for a new trial pursuant to Federal Rule of Civil Procedure 59(a). In addition, the defendant moves pursuant to Federal Rule of Civil Procedure 59(e) to amend the judgment. For the reasons set forth below, the defendant's motion is denied in part and granted in part.[1]

I.     BACKGROUND

The underlying facts of this case are set out in detail in this court's January 3, 2007 decision on the defendant's summary judgment motion and need not be repeated here. The following is a brief recitation of only those facts pertinent to the instant motion.

Ruhling was employed by Newsday as an Assistant Editor from 1984 until she resigned on May 9, 2005. (Tr. at 109-10, 407; Pl. Ex. 86). Plaintiff testified that following her refusal to

---

[1] Plaintiff's additional claims of age and disability discrimination, harassment, constructive discharge and retaliation, brought under both state and federal law, were rejected by the jury.

take a buyout in February 2002, her relationship with Newsday took a turn for the worse. By late November 2002, Ruhling was experiencing what she described as a recurrence of a repetitive stress injury (RSI), a condition caused by repetitive keystroking and stress and which produced shooting pain in her arms, neck and back. (Tr. 203-204, 213-14).

On December 30, 2002, Liane Guenther, one of Ruhling's supervisors, assigned her an editing job which required repetitive keystrokes. (Tr. 219, 1072-74). Guenther had asked plaintiff to edit all the straight quotation marks in a story and convert them to curly quotation marks. (Tr. 219-20). Ruhling informed Guenther that she was suffering a recurrence of RSI, that she was trying to get a doctor's appointment, and that this type of assignment would be particularly painful for her to undertake. (Tr. 220-21, 240). Ruhling offered to perform a different type of assignment but Guenther simply indicated it was not a problem and that someone else could do this work. (Tr. 220-21). On January 6, 2003, Ruhling scheduled a visit for January 30th with Dr. Craig Rosenberg, an RSI expert used by Newsday employees. (Tr. 233, 241, 828).

On January 17th, before she could see Dr. Rosenberg, Ruhling was asked by another supervisor, Judy Bernstein, to edit quotation marks. (Tr. 233-34, 1074-75). Ruhling informed Bernstein that she was suffering from RSI, that she had scheduled an appointment to see Dr. Rosenberg for this condition, and that the repetitive nature of this assignment made it painful for her to do. ( Tr. 233-34, 237-38). Ruhling again asked to be assigned work that would not require repetitive keystroking. (Tr. 234, 237-38). Like Guenther, Bernstein simply indicated that it was okay and did not insist that plaintiff complete the assignment. (Tr. 233- 234).

On January 20th, notwithstanding the seeming accommodation given by both Guenther and Bernstein, Ruhling was issued a formal written reprimand for insubordination by Maryann Skinner. (Def. Ex. U-1; Tr. 235, 1916). Referring to Ruhling's alleged refusal to do the editing

assignments for Guenther and Bernstein, the reprimand noted "we do not have any documentation from your physician that restricts your hours of work or your duties." (Def. Ex. U-1). It further noted that "[a]ny further instance of unacceptable behavior will result in additional disciplinary action, up to and including termination of your employment." (Def. Ex. U-1). Ruhling first learned that Newsday required supporting documentation of her RSI when she read the reprimand. (Tr. 240). Neither Guenther or Bernstein had ever asked her to produce a doctor's note. (Tr. 240; Ex. 31). Plaintiff submitted a note dated January 21, 2003 confirming her appointment with Dr. Rosenberg and later submitted his report confirming her partial disability. (Tr. 242-43, 255; Exs. 23, 28). Notwithstanding this documentation, the reprimand was never rescinded. (Tr. 242-43, 255, 262-63; Exs. 23, 28-29).

Newsday's disciplinary policy in place at the time was described as "progressive discipline." (Tr. at 2158-59). This policy provided that discipline of employee conduct be meted out in stages with each stage progressively more severe. (Tr. 2158-59). Consistent with this policy, in February and April 2003, when Newsday determined that plaintiff had violated office rules with respect to cell phone use and personal leave, she was subjected to progressive punishment in the form of a suspension without pay. (Tr. 277, 291, 330, 1677-78, 1683, 2043, 2045, 2080-81; Exs. 38, 41, 56).

On January 30th Dr. Rosenberg evaluated Ruhling and determined that she was indeed suffering a mild partial disability related to her RSI which could impair her ability to perform her full work activities. (Tr. 809-10). Ruhling's disability, described as myofascial syndrome, was evidenced by painful tightening of the muscles in her bilateral forearms and upper back region. (Tr. 801-806, 809, 811). Dr. Rosenberg determined that this syndrome was produced by repetitive keyboarding and stress and prescribed physical therapy and antidepressants. (Tr. 801, 803, 806,

3

812-13). Plaintiff was cleared to continue working with the proviso that she continue to take regular hourly breaks to rest her hands and spread the work out in order to reduce the intensity of any keyboarding activities. (Tr. 810; Ex. 28). Plaintiff was then referred to a physical therapist, Stuart Scharfman, for treatment. (Tr. 806-07, 811-12; Ex. 29). Eventually in 2005, because plaintiff's condition worsened, Dr. Rosenberg recommended that her keyboarding be limited to no more than 4 hours each day. (Tr. 383, 813).

Plaintiff first saw Scharfman on February 3, 2003 for an evaluation and returned for her first treatment session on February 6, 2003. (Tr. 268, 700). Plaintiff testified that beginning in February 2003, she felt "incredibly stressed" every single day and was worried, among other things, that she would be suspended or forced out. (Tr. 324). Plaintiff described her stress to Scharfman who noted severe spasms to plaintiff's upper rhomboid and trapezius which he described as common trigger points for stress. (Tr. 710, 713, 717, Ex. 91B). Ruhling did not see Scharfman again until 2005 when she reported that she was not sleeping well and felt ready to explode from stress. (Tr. at 726, 736-37).[2] Scharfman noted that Ruhling's neck and trapezius area were in spasm during this visit. (Tr. 730-737; Ex. 91E).

Plaintiff testified that since 2002 she has lost weight and has been very depressed. (Tr. 425-28). She described that it was "extremely stressful" going to work each day and that she could not sleep at night. (Tr. 323-24, 433). Although plaintiff's primary care physician also prescribed antianxiety and antidepressant medication, she did not take them. (Tr. 425, 820, 946). Plaintiff recounted feeling like she was "being beaten up every single day" at work and that she

---

[2]Ruhling testified that she had to cancel her physical therapy appointments with Dr. Scharfman because her work schedule conflicted and she was not given time off to go. (Tr. at 289-290, 293, 295).

was constantly worried about what was going to happen next. (Tr. 432). She recalled spending her breaks crying in the ladies' room and that she felt a "constant pounding" because she did not know when the next disciplinary action was coming or how to prevent it. (Tr. 432-33).

Several of plaintiff's co-workers also testified concerning the plaintiff's physical and emotional state. Martin Hollander testified that during the period 2002-2004 he observed that the plaintiff "seemed increasingly stressed" and was "losing weight." (Tr. 1222-23). Sylvia King-Cohen testified that during the period 2002-2005 the plaintiff "looked strained. She looked pinched, very tense, downtrodden." (Tr. 1285). King-Cohen also testified that the plaintiff was losing weight and that her hair was getting greyer. (Tr. 1285). Spencer Rumsey testified that in 2005 plaintiff "had kind of like a death camp survivor look" and that she looked like she was "being eaten up." (Tr. 1187).

The jury returned a verdict in favor of the plaintiff on her New York State Human Rights Law disability discrimination claim and awarded $100,000 to the plaintiff for emotional distress damages. The jury found that the January 2003 reprimand amounted to an adverse employment action and that the defendant was motivated, at least in part, by the plaintiff's disability when it issued that reprimand. See Verdict Sheet, Dkt. Entry No. 144.

Defendant now moves pursuant to Federal Rule of Civil Procedure 50(b) for judgment to be entered as a matter of law in its favor for three reasons. First, the defendant asserts that the plaintiff failed to prove that the January 2003 reprimand was an adverse employment action. Next, defendant contends that there was no "competent evidence" from which the jury could have found that Newsday issued the January 2003 reprimand because of her RSI. Third, defendant urges that the court set aside the jury's $100,000 emotional distress damages award because there was no evidence presented at trial that plaintiff suffered her claimed emotional distress as a direct

5

result of disability discrimination suffered as a result of the 2003 reprimand. Alternatively, the defendant moves pursuant to Federal Rule of Civil Procedure 59 for either a new trial or to reduce the $100,000 damages award, claiming that the award is excessive and not based upon the evidence presented at trial. The court considers the defendant's argument below.

## II. DISCUSSION

### A. Standard of Review

#### i. The Standards under Rule 50 and Rule 59

A motion for judgment as a matter of law pursuant to Rule 50(b) is appropriately granted only when the court determines that "there is no legally sufficient evidentiary basis for a reasonable jury to find for a party." Merrill Lynch Interfunding, Inc. v. Argenti, 155 F.3d 113, 120 (2d Cir. 1998); Yin Wang v. YUM! Brands, Inc., CV 05-1783(JFB), 2008 WL 428669, at *1 (E.D.N.Y. Feb. 14, 2008). A movant seeking to set aside a jury verdict faces a "high bar." Lavin-McEleney v. Marist Coll., 239 F.3d 476, 479 (2d Cir. 2001). Indeed, a jury verdict should be set aside under Rule 50 only where there is "such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture," or where there is "such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded [jurors] could not arrive at a verdict against [it]." Kosmynka v. Polaris Indus., Inc., 462 F.3d 74, 79 (2d Cir. 2006). In applying this standard, a court must not make credibility assessments and must view the evidence in the light most favorable to the non-moving party. See Tolbert v. Queens College, 242 F.3d 58, 70 (2d Cir. 2001); Gordon v. Matthew Bender & Co., 186 F.3d 183, 184 (2d Cir. 1999).

The standard for granting a new trial pursuant to Rule 59 is less stringent than that for judgment as a matter of law. See Manley v. Ambase Corp., 337 F.3d 237, 244-45 (2d Cir. 2003).

On a motion for new trial, the judge may grant a new trial even if there is substantial evidence to support the jury's verdict. Id. The court may weigh the evidence for itself without viewing it in the light most favorable to the verdict winner. Id. Still, a new trial may only be granted if "the court is convinced that the jury has reached a seriously erroneous result, or that the verdict is against the weight of the evidence, making its enforcement a miscarriage of justice." Manley, 337 F.3d at 244-45; Smith v. Lightning Bolt Prods., Inc., 861 F.2d 363, 370 (2d Cir. 1998).

If a district court finds that a verdict is excessive, it may order a new trial, order a new trial limited to damages, or, under the practice of remittitur, condition denial of a motion for a new trial on the plaintiff's accepting damages in a reduced amount. Cross v. N.Y. City Transit Auth., 417 F.3d 241, 258 (2d Cir. 2005). However, it is not among the powers of the trial court, where the jury has awarded excessive damages, simply to reduce the damages without offering the prevailing party the option of a new trial. Zakre v. Norddeutsche Landesbank Girozentrale, CV 03-257(RWS), 2008 WL 351662, at *2 (S.D.N.Y. Feb. 8, 2008) (citing Vasbinder v. Scott, 976 F.2d 118, 122 (2d Cir. 1992)). With these standards in mind, the court considers the defendant's motion.

    ii.     The Defendant's Rule 50(b) Motion

a. Was the Reprimand an Adverse Employment Action?

In order to prove her state law disability discrimination claim in connection with the January 2003 reprimand, the plaintiff had to prove that the reprimand constituted an adverse employment action. Galabya v. New York City Bd. of Educ., 202 F.3d 636, 639 (2d Cir. 2000). To do so, the plaintiff had to prove that she suffered a "'materially adverse change' in the terms and conditions of employment." Joseph v. Leavitt, 465 F.3d 87, 90 (2d Cir. 2006) (citing Galabya, 202 F.3d at 640)). "'To be materially adverse,' a change in working conditions must be

7

'more disruptive than a mere inconvenience or an alteration of job responsibilities.'" Galabya, 202 F.3d at 640 (citation omitted); see also Joseph, 465 F.3d at 90. Consistent with this definition, the parties agreed to the following jury instruction:

> To be materially adverse, a change in working conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities. A materially adverse change is indicated, for example, by a termination of employment; a demotion evidenced by a decrease in wage or salary; a less distinguished title; a material loss of benefits; significantly diminished material responsibilities; or other factors unique to each particular situation . . . ."

Jury Instruction, at page 12.

The defendant now argues that the written reprimand issued by Newsday to the plaintiff in January 2003 was not an adverse employment action under the NYSHRL as a matter of law because plaintiff "never suffered any loss of pay or salary, any material loss in her benefits, any material change in her job duties, or any type of material change whatsoever as a result of that reprimand." The court disagrees.

The Second Circuit has "defined adverse employment action broadly to include 'discharge, refusal to hire, refusal to promote, demotion, reduction in pay and reprimand.'" See Lovejoy-Wilson v. NOCO Motor Fuel, Inc., 263 F.3d 208, 223 (2d Cir. 2001) (quoting Morris v. Lindau, 196 F.3d 102, 110 (2d Cir. 1999); see also Gallo v. Second Taxing District of City of Norwalk, 507 F. Supp.2d 164, 174 (D. Conn. 2007) (citing Kaluczy v. City of White Plains, 57 F.3d 202, 208 (2d Cir. 1995) (add'l citation omitted). The Second Circuit has also made clear that "[w]hether an undesirable employment action qualifies as being 'adverse' is a heavily fact-specific, contextual determination." Zelnik v. Fashion Inst. of Tech., 464 F.3d 217, 226 (2d Cir. 2006) (quoting Hoyt v. Andreucci, 433 F.3d 320, 328 (2d Cir. 2006).

The testimony in this case reflected that under Newsday's progressive discipline policy a

reprimand was essentially the equivalent of two strikes in baseball. Thus, following the reprimand, Newsday felt justified in suspending plaintiff without pay for her next perceived infraction. Unquestionably under these circumstances the reprimand materially altered plaintiff's employment status at Newsday. It placed her in immediate jeopardy of losing pay and brought the prospect of dismissal as a punishment that much closer. As reflected in the testimony, this change in status was a source of great distress to the plaintiff.

Defendant's reliance on the Second Circuit's instruction that "an employee does not suffer a materially adverse change in the terms and conditions of employment where the employer merely enforces its preexisting disciplinary policies in a reasonable manner," citing Joseph, 465 F.3d at 91, is misplaced. Defendant overlooks the requirement that the enforcement of an employer's disciplinary policies must be reasonable. Here, the evidence supports the jury's finding that the reprimand was issued with an improper motive and as such unjustified. The testimony reflected that plaintiff did not refuse to do either editing assignment as indicated in the reprimand. She simply asked if she could be given an alternate assignment. Plaintiff's immediate supervisors, Guenther and Bernstein were apparently satisfied with plaintiff's RSI explanation and willingly accommodated her request for a different assignment. There was no indication that either Guenther or Bernstein asked for or suggested that plaintiff produce a doctor's note to justify her request for a different assignment based on her RSI. The testimony at trial also revealed that Newsday was particularly aware of the problem of RSI among its employees and had policies indicating their sensitivity to the problem. (Tr. 660-61, Ex. 18). Finally, even after Newsday received the medical confirmation it sought they did not rescind the reprimand and indeed relied on it as a basis for imposing progressively harsher discipline on plaintiff. Given these facts the jury could reasonably have concluded that Newsday's decision to reprimand plaintiff

9

was unjustified and constituted an adverse employment action.

b. Was the Reprimand Issued Because of Plaintiff's RSI?

The second reason advanced by Newsday, that the reprimand was not issued "because of her RSI" is equally unavailing. The jury reasonably could have concluded that Newsday had ample evidence of plaintiff's RSI disability yet nonetheless reprimanded her for simply asking that she not be forced to do an assignment that would be particularly painful. As noted, Newsday because of the nature of its business was particularly aware of the potential for RSI and had policies in place to address this issue. (Tr. 660-61, Ex. 18). Notwithstanding the above, when plaintiff sought consideration for her condition after describing that she was suffering a recurrence of RSI she was punished. Defendant argues that the evidence establishes only that the reprimand was for insubordination for refusing an assignment. This argument ignores plaintiff's testimony that she did not refuse the assignment and that her immediate supervisors willingly accommodated her and said nothing to indicate that her actions were considered insubordinate. Defendant's argument also chooses to ignores what is essentially at the heart of the reprimand, that her RSI was the reason plaintiff gave for requesting a different assignment. (Tr. 220-21, 233-38; Def. Ex. U-1; Pl. Ex. 31). That plaintiff was then disciplined for having explained that she could not complete the assignments because of her RSI was reasonably seen by the jury as discipline "because of the RSI." Thus, because the jury reasonably concluded that the reprimand was issued because of plaintiff's RSI, this prong of the defendant's motion is denied.

c. Was there Sufficient Evidence that the Plaintiff Suffered Emotional Distress as a Direct Result of Disability Discrimination?

Defendant argues that the evidence was insufficient to establish that the plaintiff suffered

emotional distress as a direct result of disability discrimination. Accordingly, defendant asserts that the jury's $100,00 emotional distress damages award should be set aside.

It is well-established that "[a] plaintiff's recovery for mental anguish under the Human Rights Law is limited to compensation for actual and proven injury" and "must be corroborated by reference to the circumstances of the alleged misconduct." McIntosh v. Irving Trust Co., 887 F. Supp. 662, 666 (S.D.N.Y. 1995). Accordingly, the court instructed the jury that it had to find a "direct" causal connection between the reprimand and any emotional distress suffered by the plaintiff:

> To award such damage, you must also find that a plaintiff has proven, by a preponderance of the evidence, that *her emotional distress and mental anguish was the direct result of the act or acts of discrimination*. . . .You may not speculate about such damages. You must be guided by common sense. If you find that the plaintiff has proven that she suffered mental or emotional distress, and that *the distress was caused by the acts of discrimination*, you must fix an amount of damages that will, as much as money can, fairly compensate the plaintiff for her emotional distress.

Jury Instruction at 35-36 (emphasis added).

Defendant's argument that there was no direct evidence that any emotional distress suffered by Ruhling's was because of the reprimand but, rather because of the cumulative impact of all of the alleged discriminatory and harassing conduct by Newsday is unpersuasive. Implicit in this argument is an acknowledgment that there was some evidence of emotional distress damages attributable to the reprimand. Moreover, defendant ignores Dr. Rosenberg's testimony that plaintiff complained of stress from the outset. (Tr. 820, 838-839). Additionally, Scharfman testified that plaintiff complained that work stress contributed to her symptoms as early as February 6, 2003, just 17 days after the reprimand. The temporal proximity of the reprimand with plaintiff's complaint of distress supports the jury's finding of emotional distress damages

11

attributable, at least in part, to the reprimand. On the basis of this evidence, the jury reasonably could have found that the plaintiff's stress as a consequence of the reprimand was one of the factors contributing to the exacerbation of her RSI. McGrory v. City of New York, CV 99-4062(FM), 2004 WL 2290898, at *11 (S.D.N.Y Oct. 8, 2004) (sustaining emotional distress damages award where plaintiff's depression was attributable, at least in part, to his retaliatory termination); Gatti v. Community Action Agency of Greene County, Inc., 263 F. Supp.2d 496, 512 (N.D.N.Y 2003) (sustaining emotional distress damages award even though other factors may have concomitantly contributed to plaintiff's physical discomfort).

Given the court's instruction, together with the fact that "'juries are presumed to follow their instructions,'" see, e.g., Creative Waste Management, Inc. v. Capitol Environmental Services, Inc., 495 F. Supp.2d 353, 361 (S.D.N.Y. 2007) (quoting United States v. Salameh, 152 F.3d 88, 116 (2d Cir. 1998) (add'l citation omitted); see also TradeCard, Inc. v. S1 Corp., 509 F. Supp.2d 304, 327 (S.D.N.Y. 2007) ("Courts are entitled to presume that the jury followed the instructions given to it.") (citing Chalmers v. Mitchell, 73 F.3d 1262, 1267 (2d Cir.1996)), there is no basis to conclude that the jury has reached a seriously erroneous result by awarding plaintiff emotional distress damages as a result of the reprimand.

iii.  The Defendant's Rule 59 motion

Alternatively, defendant contends that the $100,000 emotional distress damages award is excessive. Based on the evidence, defendant argues that an award of $5,000 to $15,000 at best is warranted for plaintiff's "garden variety" emotional distress. Because the compensatory damages at issue were awarded to plaintiff on her NYSHRL disability discrimination claim, the parties agree that New York CPLR § 5501(c) governs the determination of whether the damages award is proper. Cross v. New York City Transit Auth., 417 F.3d 241, 258 (2d Cir. 2005). CPLR §

12

5501(c) provides in relevant part that "an award is excessive or inadequate if it deviates materially from what would be reasonable compensation." N.Y. CPLR § 5501(c). Applying this provision, the Second Circuit has instructed that "an award of damages must be reduced if it 'deviates materially from what would be reasonable compensation.'" Cross, 417 F.3d at 258 (quoting N.Y. CPLR § 5501(c)). Thus, in determining whether an award "materially deviates" the court is required to consider awards in analogous cases for injuries similar to that sustained by the plaintiff. Ehrlich v. Giffin, 2007 WL 247732 (2d Cir. Jan. 25, 2007) (citing Gasperini v. Ctr. for Humanities, Inc., 518 U.S. 415, 425 (1996)). Indeed, "[t]he practice of assessing awards by comparing them to awards made in similar cases stems from the recognition that although judges are in no better position than jurors to place a monetary value on a person's pain and suffering, by reviewing case law they can provide some uniformity and predictability in damage awards." Bick v. City of New York, 1998 WL 190283, at *22 (S.D.N.Y. Apr. 21, 1998).

As a threshold matter, the court disagrees with defendant's characterization of the plaintiff's emotional distress damages claim as "garden variety." It is well-established that a "garden variety" emotional distress damages claim exists where "'the evidence of harm was presented primarily through the testimony of the plaintiff, who describes his or her injury in vague or conclusory terms and fails to describe the severity or consequences of the injury.'" See, e.g., Rainone v. Potter, 388 F. Supp.2d 120, 122 (E.D.N.Y. 2005) (quoting Michelle Cucuzza, Evaluating Emotional Distress Damage Awards to Promote Settlement of Employment Discrimination Claims in the Second Circuit, 65 Brook. L. Rev. 393, 427-28 (1999)); see also McGrory v. City of New York, 2004 WL 2290898 (S.D.N.Y. Oct. 8, 2004). In addition, where the defendant's conduct exacerbates a pre-existing condition, courts have deemed the scope of damages to be beyond "garden variety." Gatti, 263 F. Supp.2d at 512 (citing Shea v. Icelandair,

13

925 F. Supp. 1014, 1022-25 (S.D.N.Y. 1996)).

Here, the evidence establishing plaintiff's emotional distress was not limited to the plaintiff's testimony, but was corroborated by the testimony of her physician and physical therapist, who provided ample testimony concerning both the severity, duration and the physical manifestation of the distress suffered by plaintiff as well as the aggravation of her RSI. (Tr. at 324, 427, 433, 1187, 1222-23, 1285). Accordingly, plaintiff's emotional distress damages are more than mere garden variety. Rainone, 388 F. Supp.2d at 126; Gatti, 263 F. Supp.2d at 512.

It is unlikely, however, that the stress suffered by the plaintiff during the period 2002-2005 is wholly attributable to the reprimand given that she continued to work for Newsday through May 2005 and claimed to have suffered age and disability discrimination, harassment, a hostile working environment, retaliation and that she was constructively discharged during this period. These claims were rejected by the jury and the court cannot ignore that these events must have contributed at least in some degree to plaintiff's stress. The court must therefore parse out the stress caused by the reprimand from the other workplace events that followed. In this regard, the court has surveyed the case law and, like the parties, has been unable to locate a case where a plaintiff was awarded emotional distress damages in the $100,000 range based solely on a reprimand. The court's research has revealed that awards in the $100,000 range have been sustained where the plaintiff prevailed on most if not all of the claims tried and where the plaintiff suffered an adverse employment action of greater severity than a reprimand. See, e.g., Zakre v. Norddeutsche Landesbank Girozentrale, CV 03-257(RWS), 2008 WL 351662 (S.D.N.Y. Feb. 8, 2008) (upholding $100,000 emotional distress award where plaintiff's failure to promote, hostile work environment, retaliation and termination claims under federal, state and local law were all decided in her favor); Gatti v. Community Action Agency of Green County, 263 F. Supp.2d 496

14

(N.D.N.Y. 2003) (upholding $80,000 emotional distress damages award where plaintiff's hostile work environment, termination and retaliation claims under state and federal law were all found in her favor); see also Patterson v. Balsamico, 440 F.3d 104, 120 (2d Cir. 2006) (upholding $100,000 emotional distress damages award citing the direct physical attack on the plaintiff while at work).

The court finds the recent Southern District decision, Kinneary v. City of New York, 536 F. Supp.2d 326 (S.D.N.Y. 2008), instructive. There, the plaintiff sued his employer under federal, state and local law claiming discrimination because of his disability, namely paruresis or shy bladder syndrome. Plaintiff was suspended after failing to provide a urine sample as was required by federal regulations as part of random drug testing. Plaintiff claimed that, due to his disability, he was unable to comply. Following a hearing, plaintiff was suspended for misconduct in refusing to submit to random drug testing and the plaintiff's lawsuit followed. The jury rendered its verdict for the plaintiff and awarded $125,000 in emotional distress damages. Explaining that "court's in circumstances similar to [plaintiff's] have found emotional distress awards in the six-figure range to be excessive," the court granted the defendant's motion for remittitur conditioned upon the plaintiff's acceptance of a $25,000 emotional distress damages award. Id. at 332 (collecting cases). In reaching this sum, the court relied on the fact that the plaintiff offered no medical evidence of any objective physical manifestation or that he sought any psychological or medical treatment. While no two cases are exactly alike, the court finds that the emotional distress damages award of $100,000 here is excessive. The court cannot ignore that the jury rejected the majority of plaintiff's claims and that she prevailed only on the least significant of the challenged employment actions, the reprimand.

Given that plaintiff has offered evidence of the physical manifestation of her stress

15

together with medical testimony from her treating physician and physical therapist, the court finds that an award in the $50,000 range is more in line with the relevant case law.  See Lynch v. Town of Southampton, 492 F. Supp.2d 197 (E.D.N.Y. 2007) (reducing $251,000 emotional distress damages award to $50,000 where plaintiff testified that she took antidepressant medication following her termination) (collecting cases); Rainone v. Potter, 388 F. Supp.2d 120 (E.D.N.Y. 2005) (reducing $175,000 emotional distress damages award to $50,000 because although the level of distress was more than mere garden variety given the plaintiff's treatment by a psychologist for depression, the jury award was excessive absent serious psychological injuries) (collecting cases); see also Uddin v. New York City/Administration for Children's Services, CV 99-5843(GEL), 2001 WL 1512588 (S.D.N.Y. Nov. 28, 2001) ($60,000 emotional distress damages award upheld given the evidence of plaintiff's concrete emotional problems having tangible physical consequences).  For these reasons, this prong of the defendant's motion is granted and the court will order a new trial on the issue of damages unless the plaintiff agrees no later than 20 days from the date of this opinion and order, in writing, to a remittitur reducing the emotional distress award to $50,000.

## CONCLUSION

For the reasons set forth above, the defendant's motion for a directed verdict and a new trial pursuant to Federal Rules of Civil Procedure 50(b) and 59(a) are denied and the motion to amend the judgment pursuant to Rule 59(e) is granted as set forth above.

Dated: Central Islip, New York
      May 13, 2008

**SO ORDERED:**

_____/s/_____
ARLENE R. LINDSAY
United States Magistrate Judge